It looks like Mr. Gallagher gets to go first. Can I please the Court? Philip Gallagher for Brent Justice. The issue before the Court is whether the three videos at issue underlying the four counts of the conviction in this matter are obscene and specifically whether they include depictions, patently offensive depictions of sexual conduct. They are not obscene because they do not, two of the videos do not contain depictions of sexual conduct. In the other video, while it does contain conduct which is included as sexual in the examples of Miller, the gravity of it and in context of the whole video, it is not patently offensive. Which one is that? That would be the Adam meets Eve, the one involving the cat, Your Honor. So that's the one that involves urination and excretory functions is included on the list of examples in Miller. The other videos do not include such conduct. The Supreme Court has made clear that when Congress has not otherwise defined or given examples of sexual conduct, the courts will provide an authoritative construction of that and they'll use the construction from Miller. The requirement that what is sexual conduct be specifically defined was set forth in Miller. It's never been backed away from. That same day, the court announced in twelve 200-foot reels of film that it would use those examples to remedy vagueness in federal laws that did not define obscenity or lewdness. And then it in fact applied that the next year in Hamling to another federal statute which did not define obscenity or lewdness. And then this court, of course, did the same in Thevis shortly after Miller to, again, applying that list of examples from Miller to remedy what would otherwise be a vague federal statute. Okay. Is masturbating with an animal sexual conduct? Masturbation is, yes. Masturbation is given as an example, yes. Okay. And isn't that what's happening in White Chick 3 at the very beginning? She is, to me, it's, man, I don't want to be graphic here, but there's no other way to look at it. She is masturbating with a chicken. Why is that not patently offensive sexual conduct? I disagree that that's what's going on in that. You're right that masturbation would be included. I don't dispute that. I disagree that that's what's happening in that video, Your Honor. I think the government's description. Okay. Well, if there is a factual dispute of what somebody could perceive that to be, wouldn't that be a fact-finding we defer to the district court on? No, Your Honor. Because I agree with the district court on that. I have watched it, and there is no other way to look at that. Y'all have tried your best to sanitize these things, but she is sitting on a chicken, and she's pumping. Okay. There's no other way to put it. And she's simulating that she's enjoying that. That's masturbation. So I don't understand how you can say that's not sexual conduct. Well, first, your question is a standard of review. No, I don't think you defer to the district court on this. I think Bragsdale and other decisions make clear that this court exercises its independent judgment as to whether something is obscene. All right. Well, my independent judgment is she's masturbating. And then as far as – How can you – what would dissuade me from that? Again, I mean, I have two colleagues that may have a different view, but I'm speaking for myself. Tell me what would dissuade me from that. I think the lack of nudity displays it. I mean, frankly, I think the way the government describes it as her moaning and writhing in a sexually suggestive manner, all while sexually clad, is correct. I mean, it's frankly more akin to provocative dancing with the chicken than it is masturbation. It is clearly sexual charge. I don't dispute that. Obviously, we've conceded throughout that this appeals to the purian interest, and so does the conduct you're specifically referring to there. But, no, what actually is happening in the part of that video you're referring to, Your Honor, is not masturbation. It's not simulated masturbation. It is simulated sexual dancing, racy dancing, provocative dancing, however you want to – however that is characterized. Chickens between her legs, right up – I mean, again, this is difficult to sit in a courtroom and talk about these kinds of things. But, anyway, all right, well, you and I can agree to disagree on that. Again, there's no way to do this without being graphic. I think it is more akin to – I think the writhing is a fairer characterization of it than pumping, Your Honor. The tranquil woodpipe would probably bring it more akin to masturbation than the dancing. Okay. And that, again – Okay, so that's one video and one issue. I think we got your point on that. So, yes, Your Honor, so – well, if we're going to talk about the video, so that's that video. And so there's – What else will we talk about? Well, I just want to be clear. So there's no lewd display of the genitalia. There is brief – not brief, but periodic display of her breasts in that. But, again – It ain't that periodic in those instances. The camera is solely focused on that. This isn't something where she's dancing around and, oopsie, the top came down and she pulls it back up. That's your description. That isn't actually what happened. And the list of examples of what counts as sexual conduct is lewd exhibition of the genitals, not just topless nudity, which other states have done that. In Ragsdale, the court talks about the Texas statute, which defines obscenity to include breasts. The federal courts haven't construed the federal statute in that way in Miller or anything else. So – Yeah, but you're talking about context, and I think that's part of the context. I would agree if that's all that happened is she danced around and her breasts were exposed, that that wouldn't be enough. But isn't that part of the context? And when we're looking at the whole video, as you want us to do, whether it's sexual? No. Well, I think it's – I mean, there's context, and obviously that is why we're conceding it's prurient. But as far as it is the sexual – and I think Ragsdale makes this clear. Ragsdale, when determining whether or not the works at issue in that case were obscene, and specifically looking at the second prong of Miller, which is all we're talking about here, looked at, one, whether there's sexual content, and then, two, whether the sexual content is patently offensive. And so what I'm suggesting is that that part we're discussing right there, the breasts, doesn't come into the equation because it's not sexual content in the first place, based on the definition provided by the courts in Miller and subsequent cases. So I know we disagree on this, but I'm suggesting there's no sexual content in that video. I understand you disagree, Your Honor. But then we're looking at whether the sexual – what you're referring to as simulated masturbation. Then the question becomes, is that patently offensive? And so – and frankly, I agree with you. That is longer than some of the other conduct we've talked – and some of these other videos that I'll talk about. So if you – I disagree that that's masturbation, but that does go on for a while, so I can't argue that that's so brief that it wouldn't count. Okay. Let me ask you about Adam's video, Eve, because I think you described the knife part as like stabbing. To me, it looks like thrusting. Why isn't that sodomizing a cat? And that's obviously – that's – I think that's the most difficult part of my case, Your Honor. So that – a couple things. One, part of what makes that – the government urges to make that sexual is the subsequent statement. That's how you – I'm sorry, again, but that's how you fuck a pussy, which comes – I do want to point out, that comes four minutes after that, and is also interspersed with much other graphic violence which is non-sexual between then, including chopping off other limbs and disemboweling the cat. And so that comes after all that, and so that's referring to this whole context, not just that instance. That instance itself is about 40 seconds long. It's relatively brief. She's not saying sexual things at that point. That, again, happens much later. I don't think that – I think, again, that is much more the stabbing that's happening throughout that video of other parts of the cat than it is a simulated sexual act. Again, I mean, it just – okay. Well, this is – it's hard because you have to kind of – you know it by seeing it. That's how it struck me when I saw it. So, I don't know. That's fine. Let me ask you another question. If we were to conclude that some but not all of the counts should be affirmed, but one or more counts should be reversed, so a mixed decision, is there anything for the district court to do? Would there need to be a resentencing or anything? Because it seems to me the 14 months that's left, is he serving the time now or is he out? He's not out, but that's due to a state charge, Your Honor. So, as far as the federal sentence goes, that is done because the judge ran it concurrently. Okay. So, there wouldn't be any purpose to a resentencing. So, if we were – I mean, I understand every conviction matters. I'm not taking that lightly at all. But if we were to reverse count two and affirm counts three through five, you know, just for example, there would be nothing more to do except direct the district court to do that. There wouldn't be a need. Vacate the special assessment, yes, Your Honor. Right. There would be no need. Okay, that would be one thing. But there would be no need for a resentencing on. That's right. Because sometimes there's an issue if it affected the other sentence or whatever, but that's behind us, right? Yeah, exactly. He's done with the prison sentence. So, yes, right. I couldn't go in and argue to give him a lower sentence because it would be meaningless. Okay. So, yes. And you mentioned the state court sentence. What is the status of that? I'm going to be as clear as I can. It's a little complicated because it's not final. As of about two weeks ago, the Court of Appeals held that he needs to be resentenced because he was sentenced as a third-degree felon and got 50 years, and they've held that that's not appropriate. So now he needs to be resentenced for a state jail felony. So he is still in custody. There's no setting for that. I checked yesterday, but it's still pending. What's the maximum punishment for a state jail felony? Two years. Oh, wow. So, frankly, unless, and again, I'm not sure whether the state has filed a petition for rehearing off that Court of Appeals case, but if that is, in fact, the final decision, then, frankly, he's done with that also. And he could go to the Texas Court of Criminal Appeals, so the state could. Possibly. I think that's unlikely because there's another decision in which the Court of Criminal Appeals reached the same issue. So I think that's, there'd have to be some other issue that I'm unaware of in the case, Your Honor. Now, is there, I just, I should have looked this up. Is there supervised release on the federal sentence? Yes, Your Honor. Okay. So, and that, again. But that was all concurrent as well. It's all concurrent, so. So there's nothing to do with that. Yes. So he gets out, he starts his term of supervised release, but that would be the same, if we affirm any of the convictions, that would be the same. Right, yes. The court would vacate one concurrent, or two concurrent, whatever, right, some number of concurrent counts of that. But there would be remaining concurrent counts. Okay. Yes. I do want to, we talked about those two videos. And I think, frankly, the one that's easiest is the black love sample. Because there's no sexual, that one, there's, and again, maybe, I may find I have a disagreement with Judge Haynes on this one. But there's no sexual conduct in that video. It is a woman, dressed provocatively, who talks provocatively to a dog, and then stabs it and cuts at it. But there's no masturbation, there's no nudity, there's no, nothing of that, that, again, nothing that's of the list of conduct that's specifically defined for federal cases appears in that. It's meant to be provocative. I recognize it's prurient. But that's, the content in there just does not fit the limited description that's allowed by Miller in the subsequent cases. Mr. Gallagher, let me suggest that you may have said enough about that, and we'll see if the government has more that you might have to respond to. But that is the weakest part of the government's case. Fair enough. One thing I do want to, and the government, I'm sure, will address this. I have, I think the government will argue, and I can avoid the specifics, but my understanding of their argument is that the Miller list of examples is not exhaustive. I think that misunderstands what happens in both Miller and the later cases. It's not exhaustive as to what legislatures are permitted to do, and the courts make that very clear. But Miller, in every case after that, has made clear that when regulating obscenity, legislatures or courts must be specific. And so that's been remedied because of the absence of congressional legislation in this, defining obscenity by courts, implying the list from Miller into that. But to be clear, if, and I realize we disagree on this, but if we were to conclude that the white chick video shows masturbation with an animal, and the Adam eats Eve video shows sodomizing of a cat, then those would fall in the Miller examples. We wouldn't need to say, well, Miller, we have to interpret Miller more broadly or something like that. Right. Simulated, yes. Yeah, I can see that simulated anal sex, simulated masturbation are included as sexual conduct by Miller. So the court doing that would not be an expansion again. So we would have to reach the question of the Miller expansion if my statements about those videos were accepted by the panel. I believe that, yes, I believe that's right. And if you found those patently offensive, which, again, I have disagreement, but I won't go back into that unless you have other questions, Your Honor. So I think the only reason you'd have to get into that is if the court found something that was sexual conduct in the Black Love sample video, which I do not see, but I can address that on rebuttal. So if the court doesn't have any questions, I'll reserve my time. Thank you. May it please the court, John Pelletier from the Department of Justice on behalf of the United States. I'll go directly to what has been referred to as the weakest part of the government's case, and that's the Black Love sample video. Now, the statute here, Section 48, uses the term obscene. Obscene is a term of art, and it carries with it the definition as set forth in Miller. Now, Miller has the subpart B, which requires a depiction or description of sexual conduct that is patently offensive. Now, the Miller decision enumerates some examples of what can be sexual conduct that's proscribed or the depictions of which are proscribed or may be proscribed, but that list is non-exhaustive. It's suggestive, and when a legislature, either the federal Congress or state legislature, uses the term obscene, that term of art, it incorporates the Miller standard and that non-exhaustive list, so the type of sexual conduct that can be proscribed extends beyond the specific examples in Miller. But regardless of the specific examples, what is sexual about this video? I mean, I watched it. It's horrible in terms of animal cruelty. I don't think anybody disputes that. But what is sexual? Well, this is violence toward an animal that a certain segment of the population finds sexually arousing, and it's intended to be sexually arousing toward a particular segment of the population. And the record establishes that. But isn't that enough? Because the statute says blah, blah, blah, and is obscene, not is intended to excite someone sexually, but is obscene. And so then obscene comes to, I mean, there's a lot of things that might excite someone sexually that we don't consider obscene. And that's true, Your Honor, but there are various components of the Miller definition that narrow the type of material that can be proscribed as obscene. It has to appeal to the prurient interest in sex. It has to be not only a depiction of sexual conduct, but also patently offensive. And then it has to be lacking in social value. So all of those narrow it. But doesn't there have to be something sexual in the video? If somebody walked in in a white suit and just started carving up an animal and somebody else was aroused by that, would that make that obscene? Would that make that sexual conduct? Just because someone's aroused by something, is that sexual conduct? Well, just to back up, the Supreme Court has made clear that conduct that would not be obviously sexual to any average viewer can be sexual conduct under the Miller standard. So, for example, sadomasochism, that is violent conduct that's intended to be sexually arousing to a certain segment of the population, can be sexual conduct. It does not have to be typical things that the average person, when viewing, would understand to be sexual conduct. But then why do we need subpart 2 at all? I mean, why wouldn't just any video in which animals are mistreated, that someone might find arousing, that's good enough under your test? That seems much broader than what we, I was on the prior panel, as you may recall, that found this not facially unconstitutional. But that was because we imported the definition, the Miller definition, into the word of C and found that to be narrow, not just any time an animal is mistreated, which unfortunately happens. That's correct. I mean, I don't think it's the standard as anyone might find sexual arousing. We have to provide evidence that this material is sexually arousing to a segment of the population and that the conduct in the video was, and you can look to the context that the Supreme Court has made clear in the Hamling decision, that you can look to the context of how it's distributed, what its intended use is for. So, for example, if you have a photograph that's included in a medical textbook, that's different than that same exact photograph that someone's trying to sell and saying, look, you're going to, this is, which is pandering, look, this is a sexually arousing photograph that I want to sell to you. So, I mean, using your example, if we're trying to teach dissection in seventh grade life sciences class, so we have this elaborate thing with an animal, and someone goes, oh, wow, I can make some money off of that, and takes that video and then markets it to the world as a sexual thing, because somebody might be turned on by this dissection of an animal, now it becomes a violation of this, of Section 48. It may, if the larger evidence establishes that this is sexually arousing. But this is who is violating it, the person that made the video for the life science class or the person that's distributing it? In the, under the statute, it would be the person who is, I believe, distributing, because I'm not sure creation, the person who created it for the lab would have the requisite mens rea, but I would have to review the statute. But to be clear, it has to be patently offensive, Your Honor. So I think that you're highly, and you're highly unlikely to have patent offensiveness for someone in the hypothetical that you're, that you're, that you're citing. Because, for obvious reasons, I mean, a depiction of a, of a dissection for a textbook is unlikely to contain the elements that would offend the, the community norms about the... Well, I mean, the, the, let's assume they took a, maybe it's not dissection, because you, I guess the animal's usually dead then, but maybe it's teaching someone how to cut up a cow or something like that, so you start with a live cow and cut them up. That would be impaling a living, non-human mammal. Oh, correct. Under subsection A, it very well may satisfy the type of conduct toward an animal that is under subsection A, but for the obscenity provision of subsection B, it has to be a patently offensive depiction of sexual conduct. It also has, so it would have to be, contravene social norms about the description or depiction of sexual conduct, and I think, and it would also have to have no social value. So here, even though it, you know, it does have social value, even though when, you know, pandered to other people, it's in a different context. So I think that, I just want to be clear that the section 48 is a very narrow statute. It, it, first of all, it... But you're defining it very broadly to get, I don't even understand why you all prosecuted this black love thing. I don't understand why you all prosecuted that, because you seem to have so many other things you could prosecute. So I don't understand why you went after that, because to me, you're really struggling to make a case here. I mean, you may prevail, but... Well, I think, Your Honor, that, that this very well may be, I can't speak to the charging decision, but I do think that this, in some respects, is very typical of animal crush videos, where you have a scantily clad woman who's kind of speaking in a provocative manner toward an animal and then physically, aggressively, physically abusing it. And that is what Congress intended to, to get at when these types of physical abusive animals are produced, because there are certain people who find it sexually arousing. And to be clear, I just want to go over why this, this statute is so narrow. Number one, it defines certain type of physical conduct under subsection A. Then number two, that physical conduct must be obscene. And again, we've been talking about the sexual conduct definition of the obscenity standard, but there's much more than that that limits the universe of what is obscene. It has to be appeal to the prurient interest in sex. It has to be patently offensive, meaning it contravenes social norms about the description or depiction of sexual conduct. And it also has to lack social value. So all that's under that subsection B. And then, in addition, there's exceptions where it does not apply to visual depictions of normal veterinary or agricultural husbandry practices, the slaughter of animals for food, or hunting, trapping, or fishing. So this is a very narrow statute. And the reason why this conduct in black love sample is sexual is because it is, in effect, sadomasochism. It is violence that is intended to be sexually arousing. And the Supreme Court has made clear that sadomasochism is a type of sexual conduct that falls under the Miller definition, even though it is not enumerated as one of the examples in the Miller decision. If you look at the Ward v. Illinois case, in that case, the Illinois legislature passed a law that prescribed obscenity. It did not define the type of sexual conduct that it reached. But the Illinois Supreme Court said that the statute encompasses, by reference, subsection B, the sexual conduct provision of the Miller standard. Now, the Supreme Court said, basically, that means that the Illinois Supreme Court did the same exact thing that we did in Hamling, which means that we basically incorporated, by reference, the Miller definition into the statute. That's what the Supreme Court did for federal obscenity statutes in Hamling, and that's what the Illinois Supreme Court did in Ward v. Illinois. And then the Supreme Court said, okay, well, here, the Miller definition is not limited to those specifically enumerated examples in the Miller decision, which is ultimate sex acts, masturbation, executory functions, and there's a fourth, which I can't recall. But it's not part of those. It extends beyond those four examples. And specifically, it said, you know, it of course reaches the type of material that the Supreme Court discussed in Michigan, which is sadomasochism, even though it is not enumerated in the Miller examples. So when a statute uses the term obscene, when it incorporates the Miller standard, it extends beyond the conduct that is specifically enumerated in Miller, and that's what Ward v. Illinois establishes and holds. Now, sadomasochism is one of those things, as in Ward v. Illinois, and Congress heard testimony about why animal crush videos are effectively one form of sadomasochism. It's the infliction of violence that some people find sexually arousing. Now, in the majority of sadomasochistic material, it is infliction of pain on a human being, but in animal crush videos, it is the infliction of pain on an animal. And that's why it falls under the Miller definition. That's what Congress intended. And to be clear, it — Well, I think the — I don't disagree that Congress is probably trying to abolish all of this, but in the prior — in the United States v. Richards, which was the prior case in this case, and we had to examine the question of facial unconstitutionality and too broad a definition, which you're now arguing for, would have made it facially unconstitutional. So we instead imported what you're now saying is a narrow definition, but arguing as broad, the Miller standard. And the Miller standard requires sexual conduct. And, you know, to some degree, almost anything could be sexual if somebody's perception is that. You know, if I smile at someone, someone could misperceive that as flirtatious when I just meant to be friendly. So, I mean, life is full of that kind of misapprehension. So if the notion is that sexual conduct is anything that could appeal to someone, you know, that's super broad. And I just don't think — if we're going to make Part 2, I guess, of 48A mean anything, it's got to be something more than just someone might perceive that as sexual. Well, I mean, I don't think the Court has to reach these broader hypotheticals about the broader reaches of whether smiling or things of that sort can be sexual conduct. Because here we're talking about physically abusive conduct, which is effectively a form of sadomasochism, which the Supreme Court has held is sexual conduct under the Miller standard. And so, you know, I — But you don't need B then. A would get you there. Because impaling and, you know, drowning and injuring and all of that, if you're just going to say that's sadomasochistic, it certainly is. I mean, so if you're abusing an animal in any way, that's sadomasochistic under your definition. So you don't really need B. You don't need the obscene part because it doesn't add anything to it. It does add a lot. You can't have a video abusing animals. Well, it adds quite a lot because the first provision describes the type of actual physical conduct that has to be depicted. And then the second, the obscenity, requires a number of requirements, one of which is it has to appeal to the prurient interest in sex. It has to be patently offensive, right? And it has to be sexual conduct in that it appeals to someone's sexual interest, yes, and it also has to lack social value. So all of those are very narrowing principles that mean just because there's abuse toward an animal does not mean that that qualifies under the statute. But if the abuse of the animal is itself the sexual conduct, you wouldn't need the extra element of having to go to Part B, which has three elements and one of them is to depict sexual conduct, because your argument is abusing an animal is the sexual conduct. Well, we have to show in the specific case that it's sexual conduct. We're not saying that every abuse toward an animal is sexual conduct. We have to show that this abuse toward an animal is sexually arousing or of sexual interest to some segment of the population. That's our burden of proof. We have to show that. We did in this case. We showed that these videos were produced specifically for individuals who were purchasing them for their own sexual gratification. They were marketed online on a XXX fetish website for people who find them sexually gratifying. We have established our burden of proving beyond a reasonable doubt that these were sexual, that these depicted sexual conduct because they were intended and did in fact appeal to the sexual interests of certain individuals. I mean, I don't want to go on and on, but there's three elements in Miller and one of them is the appeals to the prurient interest. The second is depicts the sexual conduct. So, again, something could appeal to the prurient interest and not depict sexual conduct. Well, the main work of the main work of subsection B, yes, there's a sexual conduct component of subsection B, but the main work done by subsection B is the patent defensiveness requirement. Now, the prurient interest standard and the sexual conduct that's patently offensive standard are separate requirements, but they do overlap oftentimes because something that appeals to the prurient interest in sex to the extent it establishes, demonstrates, depicts conduct is going to be many times, oftentimes, sexual conduct. But it also has to be patently offensive. That is really the main kind of work that is being done by that subsection B. And, of course, it also has to lack social value. All of these are very limiting factors, which makes it a very narrow statute. Now, the evidence in this case, as we've shown, establishes that this was conduct that was intended to and did appeal to the sexual interests of certain individuals, and there's no dispute about the prurient interest and the social value standards. Congress passed a narrow statute, which it was focused on this type of conduct, which is abusive conduct that appeals to the sexual interests of individuals. It's a narrow statute in several respects, and we'd urge you to affirm all three accounts and establish the reach of this statute and establish that it reaches the conduct that Congress intended to reach and the conduct and the depictions that are what Congress determined was a robust market in these types of materials, which are violence towards animals that are sexually arousing to particular individuals. What I'm hearing from you, Counsel, is if we decide that the second video, I'm looking for the name right now, is not affirmable, Black Love Sample, that actually is a significant impact on dealing with crush videos and maybe other things. I mean, you really are pushing pretty hard on this in a video that has no obvious sexual content to it, but very abusive content in it. Are you saying this is a significant aspect of the current use by the Department of Justice of this statute to go after videos that not on their face have what most people would consider sexual conduct, but because it appeals to prurient sexually arousing interests of certain people, this statute is being used to pursue those? I haven't done a survey of all the kind of material that Congress looked at and wanted to reach in this, but my understanding is that many of the materials that Congress looked at when it was deciding that it wanted to pass this statute after the former statute was women who were scantily clad and crushing small animals and being physically abusive toward animals, and as far as I understand, there may not have been a sodomization of the animal, there may not have been simulated masturbation. And Congress intended to reach those materials because it understood sexual conduct to include conduct that is not obviously sexual to the average person. I'm going to ask those questions a little narrower. How would this impact, I mean, do you have a lot of cases like this that look like black love sample as opposed to look like white chick or Adam meets Eve? I'm not aware of pending cases along those lines, but the position I'm representing is based on my understanding of what Congress wanted to reach and intended to reach and what was part of the Congress saw a robust market reestablish and it wanted to reach that market, squash that market, and it passed this statute to do that. Thank you, Your Honors. Two points. Just one as far as relative importance of a ruling on black love sample as to government efforts. Obviously, I think Mr. Pelletier would have a better view of the national scope of prosecutions. I've tried to keep track of these since I argued the previous case for this court several years ago. I'm only aware of one other prosecution involving animal crush videos over the past couple of years. I'm certainly not aware of any in this district, which is quite a large district, and I'm certainly not aware of any cases that have gone to this circuit. You're talking about animal crush videos of any kind, not kinds of distinctions we're making here between two of them and the third. Correct. So it's very hard to imagine how this would hamper such rare prosecutions. Frankly, the narrow ruling that it seems like the court is contemplating the effects of. It's such an awful industry I would think DOJ would be interested in. I'm sorry, Your Honor? I mean, it's such a terrible concept and an awful kind of video. I'd be surprised if DOJ or at least doesn't have some interest in it. I mean, it's anecdotal, but I have tried to keep track of it, and there just does not seem to be many cases on this in the court. And I've tried to keep track of reported appellate decisions related to this, too, and I just simply haven't found any. I mean, I think, frankly, this case gives an example of why that might be. Despite concerns about people who do these things escaping state prosecution, it certainly didn't happen in this case. Both Mr. Justice and Ms. Richards were prosecuted in state court and easily, frankly, convicted. Yeah, but that's a pretty big deal to go from 50 to two years. It's less than the federal sentence would have been here independently. Perhaps, but again, I think for reasons there, I think the state likely made charging decisions erroneously based on where it thought it could go with a single count. As we know, there is more than one video here. They probably could have brought additional counts there, too, and they chose not to because they thought they could get 50 years. Subsequent developments suggest that that was wrong. But in the future, they'll have more guidance. So in your anecdotal world, are the states doing this and the feds are staying out of it? Is that what you're saying? Well, I certainly know the states are prosecuting animal cruelty, but again, there I haven't, whether or not the video is at issue or what the actions are. So the First Amendment issues aren't there. And this certainly would be enough for state court convictions of pure animal cruelty without regard to the sexual nature. Certainly here, there's no shortage. I have no reason to think there is elsewhere, either. And the other point was just the government's suggestion that now sadomasochism should be included in the list of sexual conduct in Miller I think is wrong for several reasons. One, I think, as Judge Haynes suggested, perhaps, that it's in tension with the government's previous position. Two, it's also, frankly, flatly contrary to the requirement of Miller and other federal cases that sexual conduct be specifically defined by courts or statute. And now the government is saying, well, we can imply other things. What happened in the Ward v. Illinois case is the state there had specifically defined sadomasochistic conduct as sexual conduct, and the Supreme Court held that was permissible. But again, that step simply hasn't happened here. The court has been clear repeatedly that the Miller list allows legislatures to include additional sexual conduct, but it must be specifically done. In regulating First Amendment activity, it must be done with specificity. The court's never backed away from this in allowing other conduct to be swept in by implication. And this is, I think, obvious, but I think the government is sweeping in, again, reading out the second prong by saying, well, it's made for sexual purposes, and therefore it's sexual. But again, that reads out prong two of Miller, which does more than just say it must be patently offensive. It must be specifically defined, and that's required by fair notice and due process. And the court's never backed away from that. So this should be limited. And so certainly black love sample, for the reasons we've discussed, should be vacated. The sexual content in the other videos, again, I don't think there is any in white love. I'm sorry, the white chick videos, for the reasons we've addressed. And even in the Adam Meets Eve, it's brief in comparison to the video as a whole. That video is undeniably offensive, but what makes it offensive is the violence, not the sexual conduct. And so therefore it should not be, the First Amendment should not permit a conviction on its basis. Thank you, Your Honor.